**In re Jerry KATZMAN and Helain Katzman, Debtors.**

**SOUTHERN COMMERCE BANK, Plaintiff,**

v.

**Jerry KATZMAN, Helain Katzman, Defendants.**

Bankruptcy No. 93–1522–8P7. Adv. No. 93–457.

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Feb. 10, 1995.

Tracey K. Jaensch, Tampa, FL, for plaintiff.

Jerry Katzman, M.D., pro se.

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

This is a Chapter 7 liquidation case filed by Jerry Katzman (Debtor) and Helain Katzman, his wife, originally under Chapter 13 of the Bankruptcy Code on February 12, 1993. The case was voluntarily converted on March 23, 1993 to a Chapter 7 case. The matter presently before the Court is a two-count complaint filed by Southern Commerce Bank (Bank) seeking a determination that the debt owed by Dr. Katzman to the Bank shall be excepted from the protection of the general discharge otherwise granted to the Debtors. The Complaint, contrary to the mandate of F.R.C.P. 8 as adopted by F.B.R.P. 7008 is not a short concise statement for which relief can be granted. The fact of the matter is, the General Allegations contains sixteen paragraphs, Count I eight and Count II thirty-eight additional paragraphs.

The Claim of nondischargeability in Count I is based on § 523(a)(2)(B) of the Code. The debt sought to be excepted from the discharge is represented by a partial Final Summary Judgment entered in favor of the Bank and against Jerry Katzman, M.D. Ophthalmic Associates, P.A. in the amount of $463,079.78. The judgment is based on a certain Renewal Promissory Note which was guaranteed by Dr. Katzman and his wife. In support of the claim set forth in this Count, the Plaintiff alleges that the financial statement submitted by the Debtor dated July 31, 1987 was false in the following respects. First, it stated that the real property described was owned solely by the Debtor, the Debtor's equity was $150,000.00 and the liability encumbering the property was $25,000.00. In fact, the property was owned by a partnership composed of 13 individuals and

the property was encumbered by a mortgage in the amount of $2 million. Based upon these allegations the Bank seeks to except the amount of $463,970.78 plus interest, costs and fees. It should be noted, however, that the amount sought is now $370,528.18 plus interest at the legal rate and attorneys fees based on a final judgment entered against the Debtor dated December 3, 1992 in the Circuit Court for Hillsborough County reducing the personal liability of the Debtor on the note.

The claim in Count II of the Complaint is also based on § 523(a)(2)(B) and the alleged false representation relates to an overstatement by the Debtor on the financial statements of the Professional Association provided by the Professional Association in connection with the same loans referred above and the renewals of those notes. The financial statements which allegedly contained misstatements are those dated December 31, 1986, December 31, 1987, December 31, 1988, December 31, 1989 and December 31, 1990. According to the Bank, these financial statements overstate the fair market value of medical equipment, machinery and equipment, and furniture and office equipment as a total of $264,069.70. In addition, it is charged that the Debtor also falsely stated amounts under the category of revenue, when in fact these were not collectible accounts, nor were the accounts revenues scheduled at the value of $24,000.00. It is alleged by the Bank based on the foregoing that the Bank did rely on these financial statement in renewing several loans, all of which were ultimately rolled into one note dated January 9, 1990, and assigned loan no. 2001071–105. Based on the alleged false representation, the Bank contends it realized this detriment and suffered damages amounting to the claim set forth in Count II in the amount of $463,970.78.

The facts relevant to the resolution of the two claims of nondischargeability as established at the final evidentiary hearing are as follows:

At the time relevant, the Debtor, a physician, was the principal and sole stockholder of a professional association known as Jerry Katzman, M.D. Ophthalmic Associates, P.A.

(Professional Association). The Debtor, as principal of the Professional Association, had extensive banking relations with the predecessor-in-interest of the Plaintiff, Parkway Commerce Bank beginning in 1987, including several loans made by Parkway to the Professional Association. The first of these several loans was evidenced by a promissory note dated October 9, 1987 in principal amount of $350,000.00. As part of this transaction, the Debtor and his wife submitted their Personal Financial Statements on July 31, 1987 (Plf's Exh. No. 5) and October 5, 1987 (Plf's Exh. No. 10).

The Personal Financial Statement dated July 31, 1987 (Plf's Exh. No. 5) was prepared by the Debtor on a printed form of Barnett Bank and it was submitted to the Bank in connection with the loan application by the P.A. The loan was granted by the Bank and was personally guaranteed by the Debtor and his wife. The July Financial Statement which was signed only by the Debtor contained answers to two questions in the negative. The first required a disclosure of any previous bankruptcy, composition settlement or whether the Debtor is a defendant in any legal actions. The second called for the disclosure of any contingent liability as a comaker on leases or contracts, or Federal Income Tax Liability.

It is without dispute that on January 28, 1987, the Fort Brooke Savings and Loan Association (Fort Brooke) filed a complaint in the Thirteenth Judicial Circuit in and for Hillsborough County Florida (Case No. 87–11718) and named as a defendant, among others, the Debtor and his wife (Plf's Exh. No. 11). This suit arose from a loan made by Fort Brooke to a partnership known as Building Block Associates. This loan, was secured by a mortgage in real property owned by the partnership. The partners of Building Block signed personal guarantees of the Fort Brooke obligation. The defendants named in the Fort Brooke suit included the Debtor as well as the other partners in the partnership and Building Block. In this suit, Fort Brooke sought a money judgment against the defendants in the amount of $1,742,679.39 plus interest, attorney fees and costs. In fairness, it should be noted howev-

er that Fort Brooke only sought recovery from the real property of this partnership, and did not seek recovery from the defendants personally. It is also without dispute that although the Debtor was served with the Summons and the copy of the Complaint prior to the execution of the July Personal Financial Statement, the suit filed in January was settled in June or prior to the execution of the July Personal Financial Statement although it was not formally dismissed until November 10, 1987 (Pl's Exh. No. 14).

In addition, the Debtor in his Personal Financial Statement in the asset column under the title "real estate" furnished the following information: "Schedule Five, $175,000 and Mortgages payable on real estate $25,000." There is no question that this information pertained to an office building owned by Building Block Associates, a partnership, and not by the Debtor himself and it was encumbered by a mortgage securing a principal obligation in excess of $1,750,000 which obligation was personally guaranteed by the Debtor and for which he was also personally liable as the general partner of Building Block. In explanation, the Debtor stated that the $25,000 liability was his portion of the total obligation encumbering the property based by his 7.41% partnership interest is obviously incorrect as pointed out below.

In connection with this loan the Bank also received a second Personal Financial Statement of the Debtor, this one prepared by the Debtor's Accountant. The Statement purportedly to represent the financial condition of the Debtor and his wife as of October 5, 1987 and it was prepared by Ligori & Vaillant C.P.A. firm (Plf's Exh. No. 10). Although the accountant was present when the Debtor had a detailed discussion with the president of the Bank when his liability on the Building Block obligation was discussed and the accountant knew about it, nevertheless, it was not scheduled on the Financial Statement dated October 5, 1987, as a liability.

The Professional Association defaulted on its obligation under the Renewal Note. Thereafter, the Bank filed an action against the Professional Association and against both the Debtor and his wife on their guaranty in the Hillsborough County Circuit Court. On June 25, 1991, the Bank obtained partial final summary judgment against the Professional Association and against Dr. Katzman on his guaranty. The final judgment was entered against the Professional Association in the amount of $463,970.78 but denied vis-a-vis the Debtor, and his wife on the basis that there were genuine issues of material fact which precluded the disposition of the Bank's claims against the Debtors as a matter of law. On October 1, 1992, the Bank obtained an Order of Replevin of the personal properties owned by the Professional Association and pledged for the loan. On December 3, 1992, the Circuit Court for Hillsborough County entered a final judgment against the Debtors based on this guaranty in the amount of $370,528.18 plus interest at the legal rate plus attorneys fees to be determined.

These are basically the relevant facts based on which it is contended by the bank that the debt owed by the Debtor to the Bank in the amount of $370,528.18 should be excepted from the overall protection of the general bankruptcy discharge.

The claim of nondischargeability asserted in both Counts I and II are based on § 523(a)(2)(B). This Section provides that a debt incurred by a debtor who obtained money, property or services or an extension renewal or financing of credit by submitting a statement in writing which was materially false respecting the Debtor's financial condition on which the lender reasonably relied would be outside the protection of the general bankruptcy discharge provided that it was submitted with the intent to deceive. § 523(a)(2)(B)(i), (ii), (iii) and (iv). It has been established in a long line of cases that an exception to discharge must be construed narrowly against the creditor and liberally in favor of the debtor. *In re Specialty Plastics, Inc.*, 113 B.R. 915 (Bankr.W.D.Pa.1990), *aff'd* 952 F.2d 1391 (1991). It no longer can be gainsaid that the standard of proof required to establish a claim of nondischargeability is no longer clear and convincing but merely preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Obviously, the omission

of the false statement which is an indispensable element of this claim must be material. Thus, omission of assets of little or no value would not suffice to establish a claim under § 523(a)(2)(B). However, a misstatement of the true nature of the ownership of an asset of some substance and the extent of the encumbrances relating to that property is clearly material.

It should be noted at the outset that the evidence presented by the Bank vis-a-vis Mrs. Katzman is woefully insufficient to carry the burden imposed by law on the Bank. It is clear that Mrs. Katzman, although a signatory on the personal guarantees of the Professional Association, did not ever sign the financial statements relied upon by the Bank. In addition, there is no evidence that she provided the information on the financial statements or that she completed the financial statements. Therefore, this Court is satisfied that the Complaint against Mrs. Katzman should be dismissed with prejudice. This leaves for consideration the allegations vis-a-vis Dr. Katzman.

Taking the Bank's allegations in seriatim, the Court first considered the personal financial statements submitted by the Debtors to the Bank on which the Debtor stated that he owned the property and, he valued the same at $1,125,000 and indicated mortgages encumbering the property of $25,000. There is no question that the real estate listed on the financial statement was an office building owned by Building Block Associates, a partnership, and not by the Debtor himself and the mortgage encumbering the property was securing a principal obligation in excess of $1,750,000, an obligation which the Debtor personally guaranteed and for which he was also personally liable as the general partner of Building Block.

Although this action was not tried by the Plaintiff as effectively as some, this Court is constrained to reject the Debtor's explanation of this clearly incorrect fact statement that the $25,000 liability represented his portion of the total encumbrance which he measured by his partnership interest in the office building. While the Debtor is not a sophisticated business man, he is a well-educated physician who actually knew or should have known the difference between outright ownership of real estate and a fractional ownership in a partnership which owns the real estate in question. The explanation that the encumbrance on the office building stated by him to be $25,000 was based on his understanding that it is proper to measure his liability on the mortgage by determining it with respect to the percentage interest he had in the partnership is rejected as unfounded. Based upon the foregoing, this Court is satisfied that the Bank has carried its burden and the debt represented by the Final Judgment dated December 3, 1992 is determined to be nondischargeable.

In view of this conclusion, it is unnecessary for the Court to consider the allegations made by the Bank with regard to the representations made in response to the questions on the financial statement regarding pending lawsuits or liability arising as a co-maker of a lease or contract.

However, in order to have a complete record, this Court shall address the remaining allegations. As to the negative response to the question of pending litigation, it is clear that the Debtor was a defendant in the litigation initiated by Ft. Brooke against the Building Block partnership. However, it is equally clear that the Debtor understood the litigation had been settled prior to the completion of the July 1987 financial statement and was in fact dismissed later. His response that he was not a defendant in pending litigation was, although technically incorrect, as to his understanding as a layman was correct which is borne out by the ultimate dismissal of the litigation. The fact that later Ft. Brooke initiated a subsequent litigation against a different partnership, Tri–American, who owned the same building as Building Block is of no moment. The Debtor could not have possibly known this lawsuit would be filed and it is not a renewal of the old litigation because it seeks relief against a different entity, the Tri–American partnership. Therefore, as to the representations of pending lawsuits, there was no fraudulent misrepresentations.

As to the representations regarding his liabilities as a co-maker, this Court is

satisfied that although there are differences between the term co-maker, guaranty, etc. and that each of these terms represents a form of contingent liability, a layman may not be familiar with the technical definitions of these terms. For that reason, this Court is satisfied that the Debtors negative response to this question, while factually incorrect, was not a misrepresentation made with the intent to mislead the Bank.

This leaves for consideration the allegations relating to the collateral. These misrepresentations were contained in the financial statements of the P.A. which were submitted in connection with the renewals of the original $350,000.00 note and the ultimate consolidation note of $438,721.74 dated January 9, 1990. These Statements included misstatements of value of accounts receivables and equipment.

It should be noted at the outset that the judgment entered by the state court with regard to the loan and the renewals, for which these financial statements were supplied, was entered only against the Professional Association and not against the individual Debtor. In addition, a subsequent judgment specifically finds that the Debtor did not guarantee the renewals of the loan. This being the case, the $463,970.78 judgment against the professional association is not a debt of this Debtor and therefore, whether the financial statements of the professional association were materially false is not relevant.

In sum, this Court is satisfied that the Bank did establish with the requisite degree of proof that the Debtor did in fact obtain money with a statement in writing concerning his financial condition which was materially false and was submitted to the Bank with the requisite intent to deceive and mislead the Bank on which statement the Bank reasonably relied when granting the loan and this loan, represented by the final judgment dated December 3, 1992 is determined to be nondischargeable. A separate final judgment shall be entered in accordance with the foregoing.